UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| AUSTIN J. S. HENDRICKSON, | ) |
| Plaintiff(s), | ) |
| v. | ) Case No. 4:21-cv-00224-SRC |
| KILOLO KIJAKAZI, <br> Commissioner of Social Security[1], | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Austin Hendrickson requests judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security denying his application for child's insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–34. The Court affirms the Commissioner's decision.

**I.    Procedural history**

In October 2017, Hendrickson protectively filed, that is, he contacted the Social Security Administration with the intent to file, a Title II application for child's insurance benefits. Tr. 65, 201; 42 C.F.R. § 404.630; Social Security Admin., Program Operations Manual System GN 00204.010. The law provides child's insurance benefits when the parent of a child collects Social Security benefits and the child in question meets one of several criteria. 42 U.S.C. § 402(d). As relevant here, Hendrickson needed to show that he suffered a disability that began before age 22. The Social Security Administration eventually denied his application, but

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court substitutes Kilolo Kijakazi for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Hendrickson asked for a hearing before an Administrative Law Judge ("ALJ") and testified at the hearing.  Tr. 202–07, 213–17, 158–85.  After the hearing, the ALJ denied Hendrickson's application, Tr. 62–78, and the Appeals Council denied Hendrickson's request for review, Tr. 6–12.  As such, the ALJ's opinion stands as the final decision of the Commissioner.

**II.      Decision of the ALJ**

The ALJ determined that Hendrickson had not engaged in substantial gainful activity from his alleged onset date of November 20, 1999.  Tr. 67.  The ALJ found that Hendrickson has severe impairments of congenital septo-optic dysfunction with bilateral nystagmus causing compromised vision in the left eye, borderline intellectual functioning, and attention deficit-hyperactivity disorder (ADHD).  Tr. 67.  The ALJ further found that Hendrickson does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 67–70.

After considering the entire record, the ALJ determined that Hendrickson had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following non-exertional limitations:  he must avoid hazards, such as unprotected heights and proximity to dangerous machinery; he is limited to only occasional use of his fine near vision; he should never be required to engage in tasks requiring precise depth perception, such as threading a needle; he should never be required to perform work requiring bilateral visual acuity or use of his peripheral vision on the left side, though he is able to avoid ordinary workplace hazards; in addition, he is limited to simple, routine, repetitive tasks in an environment with few changes in the work setting and requiring work-related judgments on a frequent basis.  Tr. 70.

The ALJ further noted that Hendrickson has no past relevant work; that Hendrickson was 0 years old, a "younger person" under the regulations, 20 C.F.R. § 416.963, on the date of his

birth, the alleged onset date; that Hendrickson has a limited education and communicates in English; and that transferability of job skills was not relevant because Hendrickson does not have past relevant work.  Tr. 74.  Thus, the ALJ concluded that, considering Hendrickson's age, education, work experience, and RFC, and together with the finding that a significant number of jobs in the national economy that Hendrickson can perform do exist, Hendrickson was not disabled.  Tr. 74–75.  Hendrickson, a minor when he applied for benefits, appeals pro se, and the Court notes that Hendrickson's father wrote Hendrickson's brief for him. *See* Doc. 19 at p. 1; *Crozier v. Westside Community Sch. Dist.*, 973 F.3d 882, 887–88 (8th Cir. 2020) (collecting cases and noting that "[p]arents may litigate pro se if their minor child is denied social security benefits"); *Jamie C. v. Comm'r of Social Security*, No. 1:19-cv-1147, 2020 WL 5267914, at *1 n.2 (C.D. Ill. Aug. 17, 2020) (permitting parent to litigate social security appeal pro se on behalf of child who had turned 18 while the case was before the Social Security Administration).

**III.**    **Legal standard**

Under the Social Security Act, an adult individual is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  § 1382c(a)(3)(B).  Similarly, an individual under the age of 18 is disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in

3

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." § 1382c(a)(3)(C).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. § 416.920(a)(4)(i); *see* 42 U.S.C. § 1382c(a)(3)(C)(ii).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner evaluates the evidence to determine whether the claimant has a severe "impairment [that] significantly limits [the] claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010) (citing 20 C.F.R. § 416.920(c)); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987)); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the RFC to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (internal

4

quotation marks and citation omitted); *see also* 20 C.F.R. § 416.945(a)(1).  While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an administrative assessment—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016) (internal quotation mark and citation omitted).  Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).  Ultimately, the claimant is responsible for *providing* evidence relating to his or her RFC and the Commissioner is responsible for *developing* the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3) (emphasis added).  If the Commissioner determines that the claimant retains the RFC to perform past relevant work, he or she is not disabled.  20 C.F.R. § 416.920(a)(4)(iv).

Finally, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work that exists in significant numbers in the national economy shifts to the Commissioner.  *See Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v).  If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled.  20 C.F.R. § 416.920(a)(4)(v).  If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled.  *Id.*  At this stage, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant.  *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the Court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The Court will not "reverse merely because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 369 (8th Cir. 2016) (internal quotation mark and citation omitted).

**IV.     Discussion**

Hendrickson makes only factual—not legal—arguments in his pro se brief. That is, he puts forwards facts that he believes demonstrate that the ALJ erroneously decided his case. However, in this appeal, the Court must not reweigh the evidence. Instead, as described in the preceding paragraph, the Court ensures that substantial evidence supports the ALJ's decision.

**A.     Substantial evidence supports the ALJ's severe-impairment findings**

Hendrickson agrees with the ALJ's determination that he suffers from the severe impairments of congenital septo-optic dysfunction with bilateral nystagmus causing compromised vision in the left eye, borderline intellectual functioning, and attention deficit-hyperactivity disorder. Doc. 19 at pp. 3–4; Tr. 67. However, Hendrickson also points out that

6

"page 67 of [the] decision states he has eye problems that are severe[.] He is legally blind in his left eye . . . with compromised peripheral vision [in his right eye]. . . ." Doc. 19 at p. 3. Because the ALJ did not find blindness or compromised peripheral vision as distinct, severe impairments, one could read Hendrickson's statements as an "argu[ment] for additional eye impairments." Doc. 23 at p. 4.

To the extent Hendrickson intends to make such an argument, the Court rejects it. "[T]he failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments." *Gregory v. Comm'r Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018) (quoting *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)). Here, the ALJ considered Hendrickson's septo-optic dysfunction with bilateral nystagmus causing compromised vision in the left eye and acknowledged that the condition caused "virtua[l] blind[ness] in his left eye" as well as problems with his peripheral vision. Tr. 57, 71–72. In fact, the ALJ found that "the claimant's visual difficulties appear to have been present since birth due to septo-optic dysplasia, myopic astigmatism and nystagmus." Tr. 72. Hendrickson gives the Court no reason to question this finding and no reason to find that his various vision problems are "separate and apart" from his congenital septo-optic dysfunction with bilateral nystagmus causing compromised vision in the left eye. Thus, the ALJ did not err when she listed septo-optic dysfunction as Hendrickson's only severe ocular impairment at step two and substantial evidence supports that determination.

### B. Substantial evidence supports the ALJ's "listing" findings

Substantial evidence supports the ALJ's finding that Hendrickson does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. First, Hendrickson says he

7

is "legally blind," Doc. 19 at p. 3; however, under the regulations, the ALJ determines presumptively disabling blindness with reference to the corrected vision of the better eye. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 2.02.  Blindness means that the claimant's "[r]emaining vision in the better eye after best correction is 20/200 or less,", *id.*, yet in this case Hendrickson's right-eye visual acuity after correction is 20/60.  Tr. 693.  Thus, substantial evidence supports the ALJ's decision not to find Hendrickson's vision presumptively disabling.

Second, substantial evidence supports the ALJ's finding that Hendrickson does not meet the requirements of Listings 12.05A or 12.05B concerning intellectual disorders.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 1, Listings 12.05A, 12.05B; Doc. 19 at p. 5.  Among other requirements, an ALJ can only find a claimant disabled under Listing 12.05A when the ALJ finds "significant deficits in adaptive functioning currently manifested by [the claimant's] dependence upon other for personal needs (for example, toileting, eating, dressing, or bathing)." Here, the record reflects that Hendrickson "uses the bathroom by himself," "feeds himself," "dresses ok by himself," and "bathes ok by himself."  Tr. 276.  Thus, the Court concludes that substantial evidence supports the ALJ's decision not to find Hendrickson disabled under Listing 12.05A.

To find Hendrickson disabled under listing 12.05B, the ALJ had to find "significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:  a. Understand, remember, or apply information; or b. Interact with others; or c. Concentrate, persist, or maintain pace; or d. Adapt or manage oneself."  The ALJ found no more than moderate limitations with respect to understanding, remembering, or applying information, no limitations as to interacting with others, no more than moderate limitations in concentrating, persisting, or maintaining pace, and

8

no more than mild limitations in adaptation and self-management. Tr. 69. The ALJ supported her findings with reference to Hendrickson's function report as well as an agency-medical-consultant evaluation. Tr. 69–70.

Hendrickson appeals the ALJ's findings by disputing the record evidence and attempting to contradict it with outside-the-record statements. For example, the ALJ relied in part on Hendrickson's ability to play video games as a reason for finding no more than moderate limitations on Hendrickson's ability to understand, remember, or apply information. Tr. 69 (citing Tr. 279). In response, Hendrickson admits that he can play "low level games," but that even these games get him "upset and confused." Doc. 19 at p. 6. However, nothing in the record supports that assertion. The Court cannot consider this statement—nor can it consider Hendrickson's other outside-the-record assertions—because in this appeal the Court "consider[s] all evidence *in the record*." *Reece*, 834 F.3d at 908 (emphasis added).

Hendrickson also claims that, because his wood-shop instructor placed him in a corner (and presumably did not allow him to participate in the class), this fact precludes the ALJ's finding that Hendrickson faces no more than moderate limitations in concentrating, persisting, or maintaining pace. Doc. 19 at p. 7; Tr. 169. The Court disagrees. The fact that Hendrickson was excluded from wood-shop class does not contradict the ALJ's finding that Hendrickson has moderate limitations on his ability to maintain concentration, persistence, and pace while performing simple, unskilled work activity. If anything, the anecdote buttresses the ALJ's finding, which the ALJ further supported by reference to Hendrickson's function report which states that he enjoys reading, watching television, and playing video games. Tr. 69. Having rejected Hendrickson's attempt to interject outside-the-record evidence, as well as his attempted

9

recharacterization of the record evidence, the Court concludes that substantial evidence supports the ALJ's decision not to find Hendrickson disabled under Listing 12.05B.

      **C.**      **Substantial evidence supports the ALJ's RFC determination**

Once again disputing the record evidence, Hendrickson argues that substantial evidence does not support the ALJ's RFC determination. In determining Hendrickson's RFC, the ALJ first discussed Hendrickson's alleged difficulties and acknowledged that Hendrickson struggled with his eyesight and had problems with school. Tr. 71. She further noted that Hendrickson had to stop taking his ADHD medication due to side effects, as well as Hendrickson's father's testimony that Hendrickson had difficulty learning chores. Tr. 71. Finding this testimony not entirely consistent with the record before her, the ALJ discussed Hendrickson's function report, that Hendrickson attended high school, went on walks, and played video games. Tr. 71 (citing Tr. 274–82). She noted that Hendrickson socialized with friends and learned to wash laundry and use the dishwasher, and concluded these activities were not consistent with a finding of disability. Tr. 71. The ALJ further noted that Hendrickson could concentrate on tasks that interest him, was able to compensate for his vision loss, and that his hobbies included using a YouTube channel and writing stories. Tr. 73 (citing Tr. 708–09).

The ALJ also considered Hendrickson's educational records reflecting that he received special instruction for 15 hours per week, but also attended regular classes. Tr. 71 (citing Tr. 358). Hendrickson had difficulty with focus, organization, and task completion, but he was involved with the school's job preparation program, and his school recommended that he volunteer at a library. Tr. 71 (citing Tr. 369, 385). And finally, the ALJ considered Hendrickson's medical records. Tr. 70, 72–73. Based on this evidence, the ALJ concluded that the RFC described above accounted for Hendrickson's limitations. Tr. 70.

Hendrickson challenges the ALJ's RFC determination by disputing the facts on which the ALJ relied. For example, at various points in her decision, the ALJ referenced Hendrickson's being recommended to volunteer at the library as a book reviewer, Tr. 71, 369, that Hendrickson was seeing well with his right eye with glasses, Tr. 73, 515, that Hendrickson aspired to become a cartoonist, Tr. 71, 385, and that Hendrickson created and used a YouTube channel, Tr. 73, 709. Hendrickson, without reference to evidence in the record, contends that he was never actually recommended to volunteer at a library as a book reviewer, that a different doctor said that glasses would only "help just a little at best," that Hendrickson's desire to become a cartoonist is "just a kid's drea[m]," and that "any kid these days who has internet can create a U-tube [sic] channel." Doc. 19 at pp. 8–9. Here, the record explicitly supports each fact relied on by the ALJ, and the Court refuses to consider Hendrickson's contradictory, outside-the-record allegations. *See Reece*, 834 F.3d at 908 (the Court "consider[s] all evidence *in the record*." (emphasis added)).

At other points, Hendrickson mentions record evidence, but attempts to recast it in a different light. For example, Hendrickson reiterates that he had to stop using some of his medication and that he struggled in school. Doc. 19 at pp. 7–8. But the record supports, and the ALJ considered, each of these facts and the ALJ may weigh them as she chooses. Indeed, the Court "do[es] not reweigh the evidence presented to the ALJ," *Reece*, 834 F.3d at 908, and, as described in detail above, substantial evidence supports the ALJ's RFC determination.

**V.     Conclusion**

Hendrickson's arguments distill to a request that the Court reweigh the evidence in the case. But this Court's review is limited to determining whether the ALJ's findings are based on correct legal standards and supported by substantial evidence. It does not substitute its own judgment for that of the ALJ. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010) (citing

11

*England*, 490 F.3d at 1019).  Having found that substantial evidence supports the ALJ's conclusions and that the ALJ applied correct legal standards, this Court affirms the ALJ's decision.

Accordingly, the Court affirms the decision of the Commissioner and dismisses Hendrickson's [1] Complaint with prejudice.  A separate judgment accompanies this Memorandum and Order.  The Court directs the Clerk of Court to amend the case name and caption to reflect the substitution of Kilolo Kijakazi as Defendant in this suit.

So Ordered this 31st day of May 2022.

                                                      _____
                                                      STEPHEN R. CLARK
                                                      UNITED STATES DISTRICT JUDGE